# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DARNELL BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 1044 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| BRIAN ZYDEK, BRIAN BURG, ) | |
| ANDRES ZEPEDA, GARRY MCCARTHY, ) | |
| JODY P. WEIS, and the CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are defendants' motions to dismiss the amended complaint, which are granted for the reasons explained below.

## BACKGROUND

Plaintiff, Darnell Brown, brought this civil rights suit against the City of Chicago and former Chicago police superintendents Garry McCarthy and Jody Weis (the "City Defendants"), as well as Chicago police officers Bryan Zydek, Brian Burg, and Andres Zepeda (the "Officer Defendants" or the "Officers"). Plaintiff alleges the following facts, which the Court takes as true for purposes of the instant motions. On May 17, 2011, around 12:30 a.m., plaintiff and a friend, Ebony Mason, stopped at a gas station/convenience store at 6657 South Halsted Street in Chicago. Mason was driving her car, and plaintiff was in the front passenger seat. Plaintiff entered the convenience store to make a purchase and then left. While plaintiff was inside, a security guard approached him but did not accuse him of any wrongdoing. A few minutes later, plaintiff went back into the store to get change for a ten-dollar bill. On his way out, plaintiff

passed a second security guard, who, like the first guard, did not accuse plaintiff of wrongdoing. One of the security guards, however, then called police and reported that plaintiff had a gun.

Plaintiff returned to the car, and Mason drove to plaintiff's house. Once there, plaintiff discovered that some important papers he had had with him were missing, so he and Mason got back in the car to retrace their route. As they were driving back to the gas station, two Chicago police vehicles began following them. Plaintiff became afraid, and he removed the pistol he was carrying in his waistband and put it in his lap. Unbeknown to him, he inadvertently disengaged the safety.

One of the police vehicles that was following Mason's car was a Chevrolet Tahoe SUV driven by Officer Zepeda. Zepeda drove the SUV alongside the car and then rammed it so hard that the pistol in plaintiff's lap discharged, wounding him in the right thigh. (Plaintiff's pistol did not discharge at any other time during the incident.)

As the vehicles were slowing down, plaintiff jumped from the car and ran away while concealing his pistol in front of him. As he ran, Officers Zydek and Burg fired as many as twenty shots at plaintiff. Seven shots hit plaintiff in the back and lower extremities, but plaintiff kept running. One more shot hit him behind his right knee and caused him to fall, rendering him permanently disabled. As plaintiff fell forward, his pistol fell to the ground, and Zepeda kicked it out of reach. Plaintiff spread his arms out to surrender and was handcuffed by Zydek or Burg.

Plaintiff was subsequently charged with two counts of attempted murder, two counts of aggravated assault, and nine counts of aggravated unlawful use of a weapon. On August 18, 2013, plaintiff was acquitted of the attempted murder and aggravated assault charges. He was convicted, though, of two counts of aggravated unlawful use of a weapon under 720 ILCS 5/24-1.6, a statute that the Seventh Circuit had previously declared unconstitutional.

Plaintiff alleges that as a result of the knee injury, he lost function and suffers from constant pain. He has suffered "continuous nightmares, and is compelled to talk about [the incident] at every opportunity." (ECF No. 6, First Am. Compl. ¶ 22.) The amended complaint contains the following numbered counts: § 1983 claims against Zydek (Count I), Burg (Count II), and Zepeda (Count III); false imprisonment against Zydek or Burg, based on the handcuffing (Count IV); assault and battery against Zepeda based on the ramming of the vehicle (Count V); assault and battery against Zydek and Burg based on the shooting (Count VI); malicious prosecution against Zydek and Burg (Counts VII, VIII, and IX); § 1983 and respondeat superior claims against McCarthy and Weis "'qua'[1] the City of Chicago Police Department" (Counts X-XIII); § 1983 and respondeat superior claims against the City (Counts XIV and XV); and a claim for civil conspiracy against the Officer Defendants (Count XVI). The City Defendants and the Officer Defendants have brought separate motions to dismiss the amended complaint.

## DISCUSSION

**A.      Legal Standards**

When evaluating the sufficiency of a complaint, the Court construes it in the light most favorable to the plaintiff, accepts as true all well-pleaded facts therein, and draws all reasonable inferences in plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial

---

[1] It is not entirely clear what plaintiff means by "McCarthy and Weis 'qua'" the police department and/or City. Nevertheless, as discussed below, he fails to state a claim against them under any conceivable theory.

3

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## B. The Officers' Motion

### 1. Section 1983 Claims

"The first step in analyzing a § 1983 claim is to identify the specific constitutional right allegedly infringed." *Gray v. City of Chi.*, 159 F. Supp. 2d 1086, 1089 (N.D. Ill. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Plaintiff alleges that the Officer Defendants violated his rights under the Second, Fourth, and Fourteenth Amendments. (First Am. Compl. ¶ 23.)

#### a. Fourth Amendment

The Officers contend that plaintiff's § 1983 claims against them are time-barred, to the extent that the claims are based on the Fourth Amendment. A defendant may raise the statute of limitations in a motion to dismiss "if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). The parties agree that § 1983 Fourth Amendment claims are governed by a two-year statute of limitations. *See Brooks v. City of Chi.*, 564 F.3d 830, 832 (7th Cir. 2009) (citing 735 ILCS 5/13-202). Generally, the statute of limitations on a § 1983 claim begins to run when the plaintiff knows or has reason to know of the injury that is the basis of his action. *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013). Claims for false arrest, though, accrue when the claimant becomes detained pursuant to legal process. *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 397 (2007)).

The Court agrees with defendants that plaintiff's Fourth Amendment claims are untimely. The events at issue took place on May 17, 2011; plaintiff does not dispute that the following day, a state-court judge found probable cause to detain him on the charges;[2] and plaintiff did not file this action until January 31, 2015, well after the expiration of the two-year statute of limitations. Plaintiff argues that the time from the incident until his August 2013 acquittal on certain of the charges is excluded from the limitations period pursuant to 720 ILCS 5/3-7(a)(6), which states that "[t]he period within which a prosecution must be commenced does not include any period in which . . . the victim of unlawful force or threat of imminent bodily harm to obtain information or a confession is incarcerated, and the victim's incarceration, in whole or in part, is a consequence of the unlawful force or threats." But this statute does not apply here; it tolls the limitations period for state criminal prosecutions. Accordingly, plaintiff's § 1983 claims against the Officer Defendants, to the extent they are based on the Fourth Amendment, are dismissed with prejudice as time-barred.

      **b.**    **Second Amendment**

Plaintiff alleges that defendants violated his Second Amendment right to bear arms by "hunting the plaintiff down and shooting him eight times because he was reported to have a gun" and kicking his pistol out of reach once he was on the ground. (First Am. Compl. ¶ 23(e), (m).) As defendants point out in their reply brief, these allegations appear to be a futile attempt to transform a Fourth Amendment claim for unlawful seizure into a Second Amendment claim.

---

[2]Defendants attach to their motion copies of the Certified Statements of Conviction/Disposition that pertain to plaintiff's state-court proceedings. (ECF No. 28-1.) The Court can consider these public records, which are central to plaintiff's complaint, without converting the motion to dismiss into a motion for summary judgment. *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

5

But the complaint is not a model of clarity, and to the extent that plaintiff is alleging that the seizure of his gun violated the Second Amendment, the Court will address that claim. Defendants contend that dismissal is warranted because the Seventh Circuit has not recognized a Second Amendment right in the context of a police officer's seizure of an individual's firearm during the course of an arrest. In response, plaintiff maintains that pursuant to the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and the Seventh Circuit's decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), he had a right to possess a gun outside the home for purposes of self-defense, and the Officers wrongfully deprived him of that right.

In support of their motion, defendants cite *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571 (7th Cir. 2014), in which the Court of Appeals discussed whether the seizure of an individual's firearm during the course of an arrest gives rise to a Second Amendment claim. The Court stated in pertinent part:

> Whether and to what extent the Second Amendment protects an individual's right to possess a particular gun (and limits the power of the police to seize it absent probable cause to believe it was involved in a crime) is an issue that is just beginning to receive judicial attention. *Heller* itself recognizes that the right to possess a firearm secured by the Second Amendment "is not unlimited." 554 U.S. at 626, 128 S. Ct. at 2816. The Eighth Circuit, having concluded that the plaintiff's Fourteenth Amendment right to due process was violated by the authorities' refusal to return his gun once the legal basis for seizing it had evaporated, found no independent violation of the plaintiff's Second Amendment right to possess the gun. *Walters v. Wolf*, 660 F.3d 307, 317-18 (8th Cir. 2011). Although the court confined its ruling to the facts and did not rule out the possibility that, under different circumstances, the seizure of a gun might constitute a Second Amendment violation, *id.* at 318, it reasoned that where the plaintiff had been able to vindicate his interest in "a meaningful procedural mechanism for return of his lawfully seized firearm," by way of the due process clause, *id.* at 317, the seizure of one particular firearm did not otherwise interfere with his Second Amendment interests: "The defendants' policy and action affected *one* of Walter's firearms, which was lawfully seized. The defendants did not prohibit Walters from retaining or acquiring other firearms." *Id.* at 318

6

(emphasis in original). *Cf. Houston v. City of New Orleans*, 682 F.3d 361, 363-64 (5th Cir. 2012) (per curiam) (remanding to district court for determination whether state law permitted state officials to retain plaintiff's handgun following entry of *nolle prosequi* on charges against him, as determination that state law compelled return of gun would render it unnecessary to decide whether defendants violated plaintiff's Second Amendment rights by refusing to return gun to him); *see generally* John L. Schwab & Thomas G. Sprankling, *Houston, We Have a Problem: Does the Second Amendment Create a Property Right to a Specific Firearm?*, 112 Colum. L. Rev. Sidebar 158 (2012) (agreeing that Second Amendment does not encompass right to possess a specific firearm, criticizing lack of analytic rigor in judicial decisions to date on this subject, and proposing cautious, minimalist approach to determining scope of Second Amendment).

This is not an issue that we have addressed and it is not one that we will address here. Beyond a bare-boned contention that the seizure violated her Second Amendment rights, Sutterfield has not developed a cogent argument as to the reach and application of the Second Amendment in the law enforcement and community caretaking context. The issue is a sensitive one, as it implicates not only the individual's right to possess a firearm, but the ability of the police to take appropriate action when they are confronted with a firearm that may or may not be lawfully possessed, and which, irrespective of the owner's right to possess the firearm, may pose a danger to the owner or others.

751 F.3d at 571-72; *see also Ellis v. City of Chi.*, No. 13 C 2382, 2016 WL 212489, at *8 n.9 (N.D. Ill. Jan. 19, 2016) ("Even if Ellis had alleged in his complaint that the police wrongfully seized his firearm during his arrest, it is not clear that Ellis's Second Amendment rights would have been violated in that scenario either. Seizure claims are generally governed by the Fourth Amendment, not the Second. And the question of whether a seizure may also constitute an independent violation of an individual's Second Amendment rights is something that the courts are just now starting to address. Courts that have addressed this issue seem to agree that such seizures do *not* result in a Second Amendment violation.") (internal citations omitted).

As in *Sutterfield*, plaintiff fails to develop his argument that the seizure of his gun violated his Second Amendment rights. He also fails to acknowledge or discuss *Sutterfield*. The argument is therefore waived. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("[W]hen presented with a

7

motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants.") (internal citation omitted). Alternatively, given the Seventh Circuit's observation in *Sutterfield* that the scope of Second Amendment rights in the law-enforcement and community-caretaking context is "an issue that is just beginning to receive judicial attention," 751 F.3d at 571, the Officers would be entitled to qualified immunity on the claim because the right is not clearly established. *See Lovi v. Vill. of Arlington Heights*, 62 F. Supp. 3d 756, 768 (N.D. Ill. 2014). Accordingly, the Court will dismiss plaintiff's § 1983 claims with prejudice, to the extent they are premised on the Second Amendment.

### c. Fourteenth Amendment Due Process

Plaintiff first alleges that the Officers violated his Fourteenth Amendment rights by ramming the car in which he was riding and by shooting him eight times, thus depriving him of liberty without due process. (First Am. Compl. ¶ 23(c), (d).) These allegations fail to state a claim for violation of plaintiff's Fourteenth Amendment rights because they are premised on plaintiff's seizure, which is governed by the Fourth, not the Fourteenth, Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Doe v. Heck*, 327 F.3d 492, 518 n.23 (7th Cir. 2003) ("The Supreme Court has made it abundantly clear that substantive due process may not be called upon when a specific constitutional provision (here, the Fourth Amendment) protects the right allegedly infringed upon.").

Defendants contend that plaintiff also fails to state a Fourteenth Amendment claim based on the allegation in paragraph 66 of the complaint that they "conspired to cover up their wrongdoing by filing false reports and spurious charges against the plaintiff." This allegation appears within plaintiff's civil conspiracy count, not any of his § 1983 claims, and his references

to the Fourteenth Amendment do not refer to the alleged cover-up, so the Court does not construe the complaint as asserting a Fourteenth Amendment claim related to the alleged fabrication of evidence. The Court's conclusion is bolstered by plaintiff's failure to respond to defendants' argument; plaintiff does not address his due process allegations at all in his response. To the extent that plaintiff is asserting a Fourteenth Amendment claim based on the alleged cover-up, he has abandoned the claim by failing to respond. *See Alioto*, 651 F.3d at 721; *Stransky*, 51 F.3d at 1335.

Because there are no remaining alleged constitutional violations, plaintiff's § 1983 claims against the Officer Defendants in Counts I, II, and III of the complaint are dismissed with prejudice.

2. **State-Law Claims**

Plaintiff brings state-law claims against the Officer Defendants for malicious prosecution,[3] false imprisonment, assault and battery, and civil conspiracy. While a two-year limitations period applies to plaintiff's § 1983 claims, a "one-year period applies to state-law claims [against local governmental entities and their employees] that are joined with a § 1983

---

[3]Defendants argue that plaintiff has also failed to state a § 1983 malicious prosecution claim because such a claim does not exist. The Court does not construe the complaint as attempting to assert a federal malicious prosecution claim. Plaintiff refers only to "common law malicious prosecution," (First Am. Compl. ¶ 23(h)-(j)), and does not label his malicious prosecution counts as § 1983 claims.

9

claim." *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (citing 745 ILCS 10/8-101). Defendants assert, correctly, that plaintiff's state-law claims are time-barred.[4]

Under Illinois law, plaintiff's battery and assault claim accrued on May 17, 2011, the date that the incident occurred. *See Haynes v. City of Chi.*, No. 07 C 2231, 2008 WL 1924891, at *2 (N.D. Ill. Apr. 29, 2008). As for false imprisonment, the statute of limitations began to run on the same day, the first day of the alleged false imprisonment. *See Padilla v. City of Chi.*, No. 07 C 5253, 2011 WL 3793413, at *7 (N.D. Ill. Aug. 24, 2011) (citing cases). A claim for malicious prosecution accrues when the criminal proceeding on which it is based has been terminated in plaintiff's favor. *Ferguson v. City of Chi.*, 820 N.E.2d 455, 459 (Ill. 2004). Plaintiff alleges that he was acquitted of attempted murder and aggravated assault on August 18, 2013, so his malicious prosecution claim accrued on that date. His civil conspiracy claim, which is premised on malicious prosecution, is governed by the same statute of limitations and accrual date. *See Simon v. Nw. Univ.*, No. 15 C 1433, 2016 WL 1622614, at *7 (N.D. Ill. Apr. 22, 2016) (citing *Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 894 (Ill. App. Ct. 2013) ("Because it is the underlying tortious acts performed pursuant to the agreement that give rise to a claim for civil conspiracy, it is logical that a conspiracy claim itself be governed by the statute of limitations for the underlying tort.")).

Thus, the latest statute of limitations period applicable to plaintiff's state-law claims expired in 2014. Because plaintiff did not file his complaint in this action until January 2015,

---

[4]As will become evident below, the Court is dismissing all of plaintiff's federal claims. As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendent state claims. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). But this rule is subject to three recognized exceptions, one of which arises when the refiling of the state claims is barred by the statute of limitations. *Id.* Because that exception applies here, the Court is not relinquishing jurisdiction over plaintiff's state-law claims.

well after the expiration of the limitations periods, the state-law claims are untimely. Accordingly, Counts IV, V, VI, VII, VIII, IX, and XVI are dismissed with prejudice.

**C.      The City Defendants' Motion**

McCarthy, Weis, and the City move separately to dismiss the complaint. In the complaint, plaintiff asserts § 1983 and respondeat superior claims against these defendants.[5] In his response, plaintiff refers to his respondeat superior claims as *Monell* claims. We will construe the complaint as asserting both types of claim. Because plaintiff has failed to allege an actionable underlying substantive constitutional injury, he has also failed to allege a *Monell* claim for a flawed departmental custom, policy, or practice leading to such an injury. *See, e.g.*, *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) ("[I]t is well established in this Circuit that a municipality's liability for a constitutional injury requires a finding that the individual officer is liable on the underlying substantive claim.") (internal quotation marks and brackets omitted). Similarly, there can be no respondeat superior liability where there are no surviving state-law claims. *See McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1018 (N.D. Ill. 2012) (citing *Fustin v. Bd. of Educ. of Cmty. Unit Dist. No. 2*, 242 N.E.2d 308, 312 (Ill. App. Ct. 1968)); 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Therefore, Counts XII, XIII, XIV, and XV are dismissed with prejudice.

As for McCarthy and Weis, in order to state a § 1983 claim against them in their individual capacity, plaintiff must allege that they were personally involved in the alleged

---

[5]Plaintiff sues McCarthy and Weis in their individual and official capacities. The official-capacity claims are dismissed with prejudice as redundant of plaintiff's claims against the City. *See, e.g.*, *Robinson v. Sappington*, 351 F.3d 317, 340 (7th Cir. 2003).

constitutional deprivation. *See Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). Plaintiff has no surviving claim for a constitutional deprivation, nor does he allege any facts plausibly suggesting that McCarthy or Weis participated or acquiesced in the events described in the complaint (and there appears to be no hope of successful amendment in this respect). Accordingly, Counts X and XI are dismissed with prejudice.

## CONCLUSION

The motion of defendants Zydek, Burg, and Zepeda to dismiss the first amended complaint [28] is granted, and Counts I through IX and XVI are dismissed with prejudice. The motion of defendants McCarthy, Weis, and the City of Chicago to dismiss the first amended complaint [29] is granted, and Counts X through XV are dismissed with prejudice. Civil case terminated.

**SO ORDERED.**                             **ENTERED:**     **August 16, 2016**

_____
**JORGE L. ALONSO**
**United States District Judge**